So let me turn to the first case, which is Shakespeare versus Compu-Link and Reverse Mortgage, Reverse Mortgage Funding. Let me turn to the appellate, Mr. Tussa. Good morning, counsel. Good morning, Your Honor. May it please the court, Joseph Tussa for plaintiff appellate, Margaret Shakespeare. It's not very easy to understand you. I'm sorry. Try. That's okay, Your Honor. Can you hear me better now? Yes. Okay, I'll make sure I keep my voice up. Thank you very much. And we've reserved three minutes for my rebuttal, Your Honor. Your Honor, the federally insured Reverse Mortgage Program is designed to curb the discretion of HECM, LENDM, and servicers for making sure that senior citizens who take advantage of this loan program are not unnecessarily subjected to foreclosure or the types of nuisance fees that can erode the equity they've built up in their homes over the life of a partner. Yet, Sea Lake, who is the sub-servicing agent for the lenders and master servicers for Liberal Financial and Reverse Mortgage Funding, argued below the district court that it essentially had unbridled discretion to do any number of things it wanted to. Weren't all the things they did in the contract, or were they not? They were not, Your Honor, and thank you for asking. So I think, Your Honor, it's gotten to the heart of what the crux of the opinion below was. The opinion below essentially hinged on a finding that they could preserve the property any time that they perceived to be a default and therefore do any number of things, such as pay a borrower's taxes or not give notices mandated by HUD and the New York state laws. But that's not true. Under both the Mortgage Agreement, Section 5, and the Loan Conversion Agreement, 2.15, this preserved the property defense that they made below, and that was accepted by the district court. It's three contractual prerequisites, none of which are present, Your Honor. Counsel? Yes. Counsel, I'm inclined to agree with you that there were various things done which were quite wrong, including the thing about the repair which was in the loan and not in the mortgage and other things of that sort. But my questions are two. Those are the two things that I'm troubled by on your side, and I've got plenty of troubles on the other side, but I'd like you to address both. Thank you, Judge Calabresi. I'll try to take your questions in turn. Number one about consumer-orientated conduct. Your Honor, on the questioning from Magistrate Judge Shields below, Seeling's counsel said, These are our policies. It is our policy to pay the taxes even if they're not in default, if there's a foreclosure pending. It is our policy to charge these kind of fees and engage in these kind of foreclosure practices. And why that's important, Your Honor, is Seeling claims to be the largest subservice of reverse mortgages in the nation, servicing a portfolio of close to $40 billion in reverse mortgages. So we know from decisions like Sykes that consumer orientation is satisfied so long as potentially it can affect similarly situated consumers. It's either actually or certainly potentially affecting many, many reverse borrowers, and Seeling has admitted these are their policies. So if their policies are incorrect, Ms. Shakespeare is certainly not the only one being subject to these problems. Ms. Shakespeare was never late in paying her taxes, and yet Seeling instituted two foreclosures, paid her taxes, ultimately charging her loan an extra nearly $14,000, Your Honor, for what were essentially no violations by Ms. Shakespeare. They filed two foreclosures, both of which were dismissed. Ms. Shakespeare gets left holding the bag for these extra fees even though the foreclosures were dismissed. To your other point, Your Honor, about arms. So what we plead in the complaint, Your Honor, was in two places that they expressly were the assignee of Ms. Shakespeare's loan from LiveWell Financial. They took express contractual assignment. And then we plead at least three times that as a result of taking express contractual assignment, they are the successors who are therefore bound for LiveWell's wrongdoing and the wrongdoing of LiveWell's agent, Seeling. Counsel, would you speak for a moment about the documents on which the district court relied on this 12B6 case? Yes, Your Honor. Do you have any in particular that you'd like me to speak about? Well, there's a limit to what the district court can look at before the motion is converted to one for summary judgment, which this never was. It never was. And so, Your Honor, the defendants put in all of the loan agreements. And while we referred to them in the complaints, we did not attach them candidly, even though perhaps the court should not have looked at them. We don't quibble with it. We did refer to the loan agreements. So on that point, once you refer to them, aren't you effectively incorporating them? Yes, Judge Nadine. So we're not. Just to be clear then, my understanding of what you're saying right now is that you don't claim that the district court erred in looking at the documents to which you referred in the complaint. To which we refer in the complaint, no, Your Honor. We do not. Okay. Thank you. Judge Poole, the one place where perhaps the judge went a bridge too far was perhaps referring to the factual affidavits put in by RMF and their employees. It's one thing perhaps to look at the loan agreements that we referred to in our pleadings, as Judge Nadine was referring to. And the correspondence among the parties, certainly, that we referred to, again, we have no issue with those. When RMF's not submitting factual affidavits on Rule 12.36, in which the judge refers to them in support of its findings, we think, candidly, that's a bridge too far. Can I just add one question? I know your time is running out, but with the presider's indulgence, if I could just ask you to answer one question for me. Yes, Your Honor. Your 349 action is premised on deceptive business practices, correct? It has to be, yes, Your Honor. So let me just ask you, I understand that you were making arguments about contractual violations, but I don't understand what your theory is in which someone was deceived. In other words, when I do something bad to you or I break a promise, that is not necessarily deceptive, right? So what is the deception that you allege? Sure, Your Honor. And, of course, because we're talking about a pleading motion, let me first and foremost refer to the complaint. Paragraph 124 of the complaint is where we list the items that we claim were deceptive. Also, paragraph 59 of the complaint, we speak of a March 2016 letter. And so I don't know that I can do a much better job than we did in our pleading. But that all seemed very conclusory to me. I mean, if I say you hit my car and it was deceptive, that doesn't help me. So what was the trickery or the deception or the lie? Thank you, Your Honor. So it's Sealing telling these borrowers that we have the right to pay your taxes, so you're in full closure, without complying with the contracts, the HUD regulations, or the New York State… Right, so how is that deceptive to say, I have a right to do something, and then they violate that right? Your Honor, when they make these affirmative representations, they have the right to charge you these fees, and they don't have the right to charge you these fees. Oh, so wouldn't that make every contract claim be a deception, the way that you have just put it? Your Honor, I don't think so for this reason. And I want to come back to my pleading it being a pleading motion. Your Honor, we do not merely rely on the contract, nor even the regulations or state laws. We set out what we believe the deceptive practices are, and how Ms. Shakespeare, who is a very able-minded senior, they are a vulnerable class susceptible to being taken advantage of. The GAO has recognized it in their report about reverse mortgages. And so when the service and the lender repeatedly tell you they could sue you in foreclosure, they don't have to give you notice. When they do have to give you notice, these are deceptive practices adding thousands and thousands of dollars to these borrower's loans. But again, just going back to Judge Calabresi's point, presumably in litigation, you disagree with the other party. They make an assertion, I can do this under the law. You disagree, the judge may rule against them. Are you saying that every time a party makes a statement that winds up not being correct under the law, they have committed a deceptive business practice? Your Honor, within the boundaries of what GBL 349 says, they make a deceptive business practice in a consumer-orientated fashion, which causes injury. That's why I say GBL comes into play. And of course, I don't want to sort of gloss over the fact, of course, we do have breach of contract claims as well. Counsel, do I understand you to be saying that there is a pattern in practice by C-Link of doing this in any number of similar reverse mortgage situations? And that this statement that they would only pay taxes when they would do this and that they would only do this, et cetera, et cetera, because it is repeated in various ones, must be a way of deceiving people into entering this contract. Is that your argument? Yes, it is, Your Honor. Again, this is what we need when we say it's a policy that's been not only... Okay, I understand what you're arguing now with. Thank you, Judge. Let me just finish. You know, we did, to the extent that any of our pleading was not as robust as this report like... Counsel, your time has now expired. You've reserved three minutes for rebuttal. We'll hear from CompuLink. Your Honor, can you hear me okay? Yes, we can. Thank you. Okay. Thank you, Your Honor. Your Honor, I think that you all hit on the issue here. The claims, the only claims filed against C-Link were claims for violation of GVL 349 and an unjust enrichment claim. There's no breach of contract claim against C-Link. In order to state a claim for violation of GVL 349, of course, a plaintiff must allege facts in the complaint that establish a consumer-oriented practice that was materially misleading, the victim suffered injury as a result of that act, and to plead a deceptive practice. The appellant must identify actual misrepresentations. Well, the plaintiff here alleges that CompuLink paid the taxes before they were due, then charged her, put it on her loan, added interest and other fees that they refused to refund, that they didn't check on whether the repair was done on the first foreclosure, and didn't pay attention to what... Your Honor, with all due respect, the plaintiff, the appellant, makes those assertions in a very conclusory manner. The district court, the magistrate in particular, went through all of the documents that are actually referenced in the complaint and found... And that's another question. That's another question. Was the district court appropriately looking at documents that the plaintiffs didn't rely on, that the defendant put into the case, without converting this to summary judgment? Your Honor, the plaintiffs did rely on those documents. They're referenced in the complaint, and as we just heard, the plaintiff, the appellant, doesn't take issue with the district court's reliance on those documents. The appellant's counsel just asked that question. Look, there are allegations that have some support to them, not just speculative, that C-Link did any number of things that were wrong. For one thing, the claim that the repairs were not made, whether they were made or not, is in the loan, not in the mortgage, and so causing a default is incorrect. They also claim, and this is where, for me, the issue is, that this was part of a practice of what you were doing, and that, therefore, this was something that affected consumers generally, and not just them. And my question is whether that was stated sufficiently to get by 12b-6. Then we'll see whether there are, later on, whether there's anything to it, whether this, you know, to win, they have to show that this was consumer-oriented. But at the level of getting by just pleading, why isn't that enough? Your Honor, a couple of points. One, the complaint doesn't allege facts about any other borrower, and the facts concerning Ms. Shakespeare are very specific to her, extremely specific. Her loan was underwritten by HUD. HUD did require— As far as we know, as far as we know, they are specific to her. Right. But she's alleging that ComputerLink did this to all the reverse mortgagees. She doesn't actually have any factual support to that assertion. Plaintiff doesn't provide any facts in the complaint that support that whatsoever. But I would just like to circle back on one other issue, though. I mean, count three of the complaints— Again, we're talking 12b-6, and whether this is plausible, we're not talking— I understand, Your Honor. If I could just address that. You recited some of the things the plaintiff alleges. Count three of the complaint is the actual cause of action for a violation of GBL. Count three lists 10 different types of conduct—this vague conclusory, all that begin with the words illegal, deceptively—types of conduct that they claim ceiling and live well— Yeah, the calling— And that is a shotgun plea. That is, per se, violation of GBL. Go ahead. The calling things illegal or so on is conclusory. But the statement of facts that taxes were paid when they were not due or when not in default, the other things that they said are statements that refer to particular facts, which are not conclusory. So then we'll have to see— Count three violations of GBL have to identify a specific deceptive business practice. They list 10. So that on its face violates Rule 8 as a shotgun pleading. On its face, that violates— Counsel, don't they argue that paying the taxes without a notice to the plaintiff here was a deceptive business practice, not giving the— But there's no legal authority for that position. The contract, Section 5, specifically allows the lender to make payments under certain circumstances. There is no requirement in the contract or in any of the provisions they cite that require notice to be given. That's just a bald-faced assertion that there's no support for it in the complaint whatsoever, as the district court found. Counsel, isn't there also a complaint that notice was not given to the appropriate agency of the state that deals with reverse mortgages and that that is a recurring practice? Your Honor, with all due respect, the law is very, very clear that a GBL 349 claim cannot be based on the assertion that a party violated a law or regulation, whatever, that lacks a private right of action. There is no private right of action for that provision. Therefore, the court correctly found that none of those five or so assertions in Count 3 that are based on various alleged, assertive, purported violations of HUD regulations, state law, federal law, can support a GBL 349. That is black-letter law. Counsel, how could it not be illegal to add to the loan by paying taxes that were not due? Your Honor, taxes were due with all due respect. Your Honor, the taxes were due on December 1st. With all due respect, ComputerLink did not take notice of the 30-day grace period on the taxes, so they were arguably not due. Your Honor, there is nothing that defines... I'm sorry. Let me just ask. Is your argument that the taxes were due on December 1st and that the fact that there was a grace period did not render them not due? The fact that a grace period exists, I assume your argument is, means that there might not be penalties imposed for the default, but that did not render them not in default. That just meant that there was a period when they could remedy the default without penalty. That's your argument, whether we agree or not. Yes, correct. Because it was not in default before the taxes were due at the end of the grace period. Your Honor, there is no requirement that the tax be in default. Counsel, isn't that at least a factual question? No, Your Honor, I don't think so. Isn't that at least a question that one would want to see tried out? No, Your Honor, I don't think so, because no one disputes that the taxes were due on December 1st. They just want to define due as when the grace period ends. I don't think there's a disagreement that the taxes per the city's website and documentation, which is judicially noticeable, were due on December 1st. I don't think that's a dispute. I think the judge correctly summarized the issue. But I would just like to go back. I just want to comment on a couple of points that the plaintiff, the appellant, made in his opening statement. Appellant talked about all this discretion that Q-Link purportedly had. In fact, because this is a HUD-insured loan, there's almost no discretion. Every step of the way, HUD must approve everything we do. HUD underwrote the loan. They were the ones that required the repairs to be made. That loan agreement that you referenced to which the repair writer is attached is actually the agreement with HUD. HUD has to approve every time a loan is put into default, any time a foreclosure is commenced. The court actually, you know, asked about that during the oral argument. And then we addressed that issue. HUD was also the party that had to approve for us to dismiss the foreclosures. Every single step of the way, HUD approved what the subservicers did. Did the district court decide as it did on the ground that HUD approved it? No. I just wanted to address the comments that were made by the appellant in his opening statement. Then the question, counsel, then the question of whether HUD approval makes something not deceptive becomes a question again. See, it may well be that you win. I'm just asking whether enough was said to get by the front door. Your Honor, I believe that this is a shotgun conclusory pleading that just by the fact that it listed 10 different purported types of allegedly deceptive conduct. I mean, in fact, count three says defendants liable and feel like engaged in deceptive acts and practices in the form of misrepresentation and or omissions during the conduct of business in violation of GVL 349. By engaging in acts, methods, practices, and conduct describing this complaint, including the following. And then it lists 10 different sorts of things. I mean, that on its face is a shotgun rule eight violation pleading that can't stand because it just doesn't apprise us specifically of the deceptive business practice on which this claim is based. That alone would have warranted dismissal of this complaint. The court then went on to actually look at the documents that were referenced in the complaint and found that most of the assertions in the complaint, maybe not all, but most were actually false assertions based on the documents the plaintiff cited in their complaint. The plaintiff cannot survive a 1236 motion by misrepresenting the documents that they rely on in their complaint. The only issue before the court is whether the complaint is a GVL 349 claim. And I don't see how the court can find that it did given the clear shotgun pleading nature of this complaint. You know, there's also issues with damages and causation. You know what? What conduct exactly caused the alleged damages? I mean, the first foreclosure was caused by breach of their pair rider. And they're not even saying that that was a deceptive business practice. So those fees are not even caused remotely or arguably by whatever they claim is a deceptive business practice. I mean, the court must focus on the cause of action, the elements and the actual facts alleged and the documents are the facts in the pleading because they're incorporated by reference. And it just doesn't add up here. Counselor, your time has long expired. Let me turn to reverse mortgage funding. Thank you, Your Honor. Good morning, Your Honors. May it please the court. Jennifer Fiorica Delgado on behalf of reverse mortgage funding LLC. I think Judge Calabrese hit it on the head when he began questioning the plaintiff appellant here when he asked, essentially, why is RMF in this case? There is no basis at all. If you look at the pleading, and I heard appellant earlier say that the complaint alleges that there was an agreement under which there was an assumption of the loan. And I think what he was referring to was paragraph 17, in which it states on November 15th, Livewell notified plaintiffs that it had sold an assigned plaintiff's HECM loan to RMF effective December 1st, 2018. I don't see how that could possibly be even with the best possible reading of that allegation. Anything close to something down? Counsel, my principal question with respect to your client is the denial of leave to amend. Because it's true that they didn't ask in time, but in their pleading, they did say that they would like to amend if a dismissal were given. And don't our cases say that in those circumstances, an amendment, especially if an amendment is actually presented, will be accepted? And doesn't that amendment at least plausibly claim that there was successor liability? I tend to agree with you as to the original, but I'm worried about whether the denial of the amendment was too quick under our cases. I understand, and I'd like to address that. So I think there are two separate questions. The first is whether it was an abuse of discretion for the court to deny the plaintiff the opportunity to amend when she did not actually ask the court to give her that relief. And that was not actually before the court. The district court was not ruling on that issue because it was not actually requested. There was no complaint attached to a motion. There were no allegations in her paper that would be added to her proposed amended complaint. There was just simply nothing there for the court to rule on. And the case law actually says that the argument that this was an abuse of discretion is actually frivolous because it was not actually asked for. So it was well within the court's discretion to deny her that opportunity at the time. Now, on September 15th of last year, the court ruled finally and with finality as to RMF and C-Link and then closed the case. And it was only two weeks later that the plaintiff filed a motion for leave to amend without filing a Rule 59 motion, without filing a Rule 60 motion. And the case law is also very clear that that is required. You can't just file a motion for leave to amend in a case that has been closed. So I don't think that there is any abuse of discretion here. That also gets reviewed under that standard. And, yes, she had not yet amended her complaint. But let's talk about that complaint. Yes, there are more allegations in that complaint, but none of them are actually going to amount to a claim against RMF. There's a couple of different things that she says in that complaint. One is she tries to make the case that RMF is the principal of C-Link. First of all, she refers to a subservicing agreement that actually says that C-Link acts as an independent entity. It is not an agent of RMF. So that argument goes nowhere. And in any event, if it's an agent now, it doesn't matter that it was an agent. That's not relevant to actions that happened three or four years ago. So that doesn't actually amount to any claims against RMF. There are some allegations, although they are conclusory, that piece together some type of successor liability concept. But, again, they're conclusory. All she says is essentially there was a contract and there was an assumption of the servicing rights to this loan. And there are all these Ginnie Mae guidelines. And there are these other legal concepts that require RMF to be responsible for the servicing of the loan. But it doesn't talk about successor liability. It doesn't talk about being responsible for the acts of prior servicers. It just doesn't amount to anything. So if you actually look at the complaint, you'll see, and this court can look at it and it's in the record, you can make a futility determination. And I'd say that, you know, notwithstanding the procedural roadblocks, which I think are very real in the Second Circuit, does not change the types of liability. You're saying that the proposed amendment, even were we to allow it, wouldn't cure the problem. That's correct, Your Honor. That's exactly what I'm saying. That's exactly what I'm saying. And, you know, if you have other questions about that, I'm happy to answer them. But just to go back to the original complaint, because that is what is before the court. You know, I think there's also the allegation, which is also very conclusory, about RMF's supposed ability or the nature of our being necessary to the complaint to offer relief to the plaintiff. And by her own admission in the original complaint, she says that we are a party who can afford relief. We're not the only party that can afford relief, even if you were to believe that. And even in her amendment, her proposed amendment, arguably it's actually less of a certainty that we're even required to be in the case to begin with. Because all she says is that, you know, we should be here because we succeeded the plaintiff's loan and that we are the new servicer. She doesn't say exactly how we're necessary, why we're necessary, or why we should be a party, and let alone not a nominal party. Because, to be clear, I think the intention of the plaintiff here is to include RMF as a party in this litigation. Livewell is no longer potentially a viable party, and RMF is a party that is viable. And so I think it's very clear that the intention is to try to keep RMF in the case, not even just to provide relief, which was how this complaint was originally structured. Thank you, counsel. Thank you, Your Honor. Mr. Tussa, you've reserved three minutes for rebuttal. Thank you, Your Honor. So, Your Honor, I want to pick up where Judge Calabresi and my colleague for RMF left off with the motion. So, Your Honor, we've never— Could you move a little closer to your microphone just so that we can hear you more clearly? Yes, Judge Haldini, and I'll also try to speak up. I have lowered my voice. Sorry about that. So, Your Honor, we're at the motion-to-dismiss stage. Discovery has not begun. We had never asked to amend before, and we fought a motion to amend with a proposed amended complaint within two weeks of the court's dismissal decision. Obviously, we needed to see the court's dismissal decision before deciding if we needed to amend, and if so, how we needed to amend. Now, I heard Ms. Delgado say she wants this court to consider the amended complaint substantively in the first instance. Well, of course, the district court didn't even consider it substantively in the first instance. I don't see how Your Honors should. I think it should be remanded. And, you know, both counsel took us to task, rightly or wrongly, for the manner in which they believe our initial claims were a conclusory plea. And while we don't think that was the case, we certainly understand that the district court thought so. While we take some issues that the district court decided, we think most of this could be remedied if we were permitted to amend the complaint. Now, Ms. Delgado said, Your Honor, we were procedurally roadblocked. I presume what she means is that there was judgment. It was not judgment. I want to be clear about this. Your Honor can look at the record below. There is no judgment. Your Honors must be familiar with Civil Rules of Procedure 58A. It says the judgment must be in a separate document. There is not one. Federal Rules of Procedure 54B. And it says it's an action where there are multiple parties. That's here. Counsel, I have a question. Is the question of whether when taxes are due, is the date when they are due or after the grace period, and whether there is a default a question of New York law? Your Honor, the HUD regulation says they're not in default until the local municipality says they're in default. In the town of South Hall, where Ms. Shakespeare resides, they are not in default until after the grace period runs. You say that actually HUD regulations deal with that, and we don't need to worry about whether New York might view it differently? Your Honor, I believe it's the way we do property taxes in New York. I believe it's a municipality-by-municipality, town-by-town determination. For instance, I know the taxes in Nassau County are due at the end of February, as opposed to the end of January, where they are in the town of South Hall. Ms. Shakespeare lives in that town, and so do I, actually. So I know when the taxes are due there. Your Honor, I would point out, if Sea Link could pay the taxes on the very first day they're due, everybody's taxes would be late. They're not late until the grace period runs. You have six weeks in the town of South Hall. Are you arguing that it is deceptive to say that taxes are due a month before they are due? That that isn't simply a violation of a contract, but that when you have this funny language about they're due but they're a grace period, and everybody knows that the grace period is the crucial one, that then to claim the other is actually being deceptive? Your Honor, if I understand your point, I want to answer your question directly. Remember that they did not give notice to Ms. Shakespeare that they were going to pay her taxes. That was part of the confusion and part of the policy for having a problem with it. So it's not necessarily deceptive to tell somebody that taxes are due when they're not. That's one of the notices that they should have given her, and had they given it to her, she would have been able to tell them that taxes are not due. What was deceptive was after the fact, in March of 2016, the very first time they told her they paid their taxes, they told her they paid their taxes because you didn't pay them timely, which was a misrepresentation. Thank you. Your Honor, I know I see I'm over my time. If there's no more questions, I'll rest. Thank you, Your Honor. Thank you all for an interesting case. We'll reserve decision.